IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 07-85 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **BRIEF IN SUPPORT OF MOTION TO** |
| | ) | **SUPPRESS ITEMS OF PHYSICAL** |
| JOHN H. MONETTI, | ) | **EVIDENCE AND STATEMENTS** |
| | ) | |
| Defendant. | ) | |

## FACTS

On Monday, May 29th, 2006, Deputy Doug Overfield of the Washington County Sheriff's Office, was dispatched to respond to a concerned citizen call regarding a suspicious vehicle. The citizen described a blue mini-van with Nevada license plates. The caller claimed that he/she thought the vehicle might have been casing the area during the last two days.

> "The concerned citizen saw the vehicle drive slowly past his house and slowly throughout the area at various times, stopping briefly and driving up and down County Road 34. Deputy Overfield reported to affiant that the citizen reported that the vehicle had Nevada plates and had been observed cruising the area with no apparent destination and parking in the lot of the west entrance of Lake Land, a private residential area, located in Washington County. Deputy Overfield further advised your affiant that he arrived in the area at approximately 12:30 and searched the area of Lake Land. Deputy Overfield advised your affiant that he did not observe the suspicious vehicle at that time but did stay in the area waiting to see if it would return. Deputy Overfiled was aware of two burglaries in the area on County Road P39 in the last month and several burglaries in the county the month before. Lake Land is a private gated community. "

Affidavit and Application for Issuance of Warrant.

1

Approximately 30 minutes after the initial call, Deputy Overfield observed a blue minivan with Nevada license plates. The vehicle was not in the area of concern, rather, was legally traveling on County Road 34 in Washington County.

Deputy Overfield performed a traffic stop on the vehicle due to the reported suspicious activity and recent burglaries. The Deputy asked Mr. Monetti for his driver's license and vehicle registration. Deputy Overfield then questioned Mr. Monetti about the female passenger. Deputy Overfield believed it to be suspicious that the passenger was wearing a t-shirt and cotton pajama bottoms. Deputy Overfield was informed that the passenger was Mr. Monetti's niece. The deputy removed the passenger from the van, contacted her parents and found out that the girl didn't have permission to be with Mr. Monetti.

While in the patrol vehicle, the passenger, Ms. Logan Snyder told the Deputy that she had met Mr. Monetti on the internet and that some of their conversations had been of a sexual nature. Deputy Overfield then handcuffed Mr. Monetti and took him into custody. Mr. Monetti was read his Miranda warnings.

While being transported to jail Deputy Overfield made promises of leniency to Mr. Monetti in exchange for his cooperation. Mr. Monetti made inculpatory statements and later at the direction of law enforcement wrote letters of apology to Ms. Snyder's parents.

Subsequently, search warrants were issued for the Hotel Room where Mr. Monetti had been staying, Mr. Monetti's home in New York, and internet server records. The Affidavits in Support of the Search Warrants were based upon information and evidence gathered during the illegal stop and detention of defendant and by statements

made by Ms. Snyder.

Defendant has moved to suppress all physical evidence and statements obtained as a result of the stop, seizure, search of the defendant and his motor vehicle and the evidence obtained pursuant to the search warrant for the motel room.

## ARGUMENT

### I. THE STOP OF DEFENDANT'S VEHICLE WAS UNREASONABLE AS IT WAS NOT BASED UPON REASONABLE SUSPICION AND/OR PROBABLE CAUSE.

Law enforcement stopped Mr. Monetti's vehicle and seized him of his person solely based upon a phone call by a neighbor reporting a "suspicious vehicle" in the area. The stopping officer was aware that there had been a burglary report in the area two weeks prior.

Investigatory stops must be supported by a particularized and objective basis for suspecting criminal conduct. *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, (1968). Telephone tips need to possess sufficient indicia of reliability to support even a reasonable suspicion of criminal activity. *United States v. Walker,* 7 F.3d 26, 30-31 (2d. Cir. 1993).

An investigative stop does not violate the Fourth Amendment if the police have reasonable suspicion that the vehicle or its occupants are involved in criminal activity. The level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause. *United States v. Bell*, 183 F.3d 746, 749 (8th Cir. 1999).

"[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articuable suspicion that criminal

3

activity is afoot... While reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop... The officer must be able to articulate more than inchoate and unparticularized suspicion or hunch of criminal activity. *Illinois v. Wardlow*, 528 U.S. 119, 123-24, 120 S.Ct. 673, 145 L.Ed. 2d 570 (2000).

Mr. Monetti was stopped solely based upon the deputy's knowledge that a neighbor to the area had called and reported a "suspicious vehicle." The caller observed the vehicle driving up and down the road and parked in the public parking outside the gate of a gated community. The deputy did not corroborate nor was able to develop facts, through his investigation, that would substantiate the possibility that crime was afoot.

*Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), dealt with an anonymous tip in the probable cause context. The Court adopted a "totality of the circumstances" approach to determining whether an informant's tip establishes probable cause. *Gates*, made clear, however, that those factors that had been considered critical under *Aguilar* and *Spinelli* – an informant's "veracity," "reliability," and "basis of knowledge"– remain "highly relevant in determining the value of this report." 462 U.S. at 230. These factors are also relevant in the reasonable suspicion context, although allowance must be made in applying them for the lesser showing required to meet the standard. *Alabama v. White*, 496 U.S. 325, 328-329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

*Illinois v Gates,* 462 U.S. 213, established that a totality of the circumstances approach is used to determine if an anonymous tip has established probable cause. A reasonable suspicion standard required for a *Terry* stop is less demanding than a probable cause standard. Reasonable suspicion from an anonymous call is established by the content of information possessed by police and its degree of reliability; an anonymous tip alone seldom provides the necessary reasonable suspicion. *Id*. at 237. *See*, *Florida v. J.L.* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed. 2d 254 (2000) (anonymous call that reported a young black male, standing at a particular bus stop, wearing a particular shirt was carrying a gun insufficient to establish reasonable suspicion); *United States v. Roberson* 90 F.3d 75 (3d Circuit 1996) (tipster who stated that a heavy-set, black male, wearing particular clothing was selling drugs at a particular location did not establish probable cause) *United States v. Robinson* 536 F.2d 1298 (9th Circuit 1976) (radio dispatch that reported a stolen vehicle, identified the type of car and license plate number was not enough for reasonable suspicion); *Nebraska v. Jordan*, 1992 Neb. App. Lexis 251 (tipster who reported that an elderly black man in a specific suspicious vehicle was pointing an object at the World-Herald building did not establish probable cause).

The totality of the circumstances approach considers both the quantity and the quality of the anonymous tip to evaluate whether there is reasonable suspicion   *White,* 496 U.S. at 330. A tip must exhibit a sufficient indicia of reliability and a tip which contains a low level of reliability will require more information to establish the required level of suspicion to justify a *Terry* stop. *Id.* at 330.

5

In *White* the Court determined that an anonymous tip which contained a particular time that the accused would be leaving, a particular place the accused was leaving from, and the particular vehicle the accused was driving had established reasonable suspicion only after it had been sufficiently corroborated with police work. *See, Nebraska v. Bowley* 232 Neb. 771, 442 N.W. 2d 215 (1989) (reasonable suspicion established after motorcyclists stopped a police officer, identified a truck that was driving erratically, the officer followed the identified truck, and subsequently observed traffic violations).

When information furnished by a single complaint sufficed to establish probable cause, such information usually comes from the victim who has provided specific details of the crime. *Oliviera v. Mayer,* 23 F.3d 642, 647 (2d Cir. 1994).

In *United States v. McLeroy*, 584 F.2d 746 (5th Cir. 1978) the court held that a tip of a possible stolen vehicle and possible possession of a stolen gun based on the informant's observations of damage to the vehicle was not enough to warrant reasonable suspicion even when the tip contained the name, address, and description of the vehicle. *Id.* at 746. The officers acted on the call and surveilled McLeroy's home. McLeroy came out of his home, put a paper bag in his trunk, and eventually drove away and was then stopped by law enforcement.

The court found that none of the actions observed by the police were of a suspicious nature and could not have created any reasonable suspicion that McLeroy was involved in any criminal activity. The court held, that when the only elements of a suspicious tip is the description of a vehicle, the name, and address of a person and the police do not see any activities by the defendant that exhibit anything suspicious then

6

there is no reasonable suspicion that crime is afoot. *United States v. McLeroy*, 584 F.2d 746 (5th Cir. 1978). The court went on further to say that "[r]easonable suspicion requires more than this minimal corroboration of innocent details." *Id.* at 748.

Likewise, Mr. Monetti's case involved a tip on information that was available to any person, the description of a vehicle that was driving down a street. Here, no crime was committed or was reported to have been committed. The citizen was only reporting what he/she deemed a suspicious van. Deputy Overfield did not see any actions that confirmed the hypothesis that a crime was afoot. *See*, *Terry v. Ohio*, 392 U.S. 1 (1968). The officer did not see the van parked in front of any houses or in any driveways or even in the same neighborhood of the tipster's report. *See*, *Ruekert v. City of Flint,*, 997 F.Supp. 856 E.D.Mich.,1998  (suspect was in the driveway and the caller was a neighbor who knew that the owners were not home).

In the instant case the arresting officer did not have any facts that would corroborate the caller's concern that the blue van was "casing" the area. The officer's knowledge that there had been a burglary report two weeks prior, which was in no way linked to this van, did not provide the officer with reasonable suspicion to stop, seize, detain and arrest Mr. Monetti. The stop, seizure, arrest and subsequent questioning of Mr. Monetti was unreasonable.


**II.  NO FACTS WERE DEVELOPED THROUGH THE ILLEGAL STOP AND  SEIZURE OF MR. MONETTI THAT RENDERED THE ENSUING DETENTION AND QUESTIONING REASONABLE.**

Mr. Monetti advances the following argument in anticipation of the government's position in this case, not as an assent that the initial stop was reasonable. A

7

reasonable investigation following a justifiable traffic stop may include asking for the driver' license and registration... if an officer's suspicions are aroused in the course of such an investigation, the officer is entitled to expand the scope of the stop to ask questions unrelated to the original traffic offense, and consent given in the course of such questioning is valid so long as it is voluntary. *United States v. Allegree,* 175 F.3d 648, 650 (8th Cir. 1999), rehearing and rehearing en banc denied (June 14, 1999.) Deputy Overfield was provided with a valid driver's license and vehicle registration. No questions were asked by the Deputy in relation to the concerned citizen's call. Rather, the Deputy felt it was suspicious that the female passenger was wearing a t-shirt and pajama bottoms. Deputy Overfield was informed that the female passenger was Mr. Monetti's niece. Mr. Monetti did not try to flee, he did not act nervous, and the passenger did not appear distressed.

Deputy Overfield based his actions to seize defendant and the ensuing continued detention based upon the female passenger being dressed in cotton long pajama bottoms and a t-shirt. Under the totality of the circumstances, the officer's suspicion that defendant was involved in crime was nothing more than a hunch. *United States v. Tillman*, 81 F.3d 773, 775 (8th Cir. 1996). The continued detention, arrest and questioning beyond the original reason for the stop therefore violated Mr. Monetti's Fourth Amendment rights.

**III. THERE WAS NO ATTENUATION BETWEEN THE ILLEGAL STOP, SEIZURE AND SEARCH OF THE MOTOR VEHICLE AND MIRANDA WARNINGS WHICH ELICITED INCULPATORY STATEMENTS FROM MR. MONETTI.**

[A] confession obtained through custodial interrogation after an illegal arrest

should be excluded unless intervening events break the causal connection between the illegal arrest and the confession so that the confession is sufficiently an act of free will to purge the primary taint.  If *Miranda* warnings were viewed as a talisman that cured all Fourth Amendment violations, then the constitutional guarantee against unlawful searches seizures would be reduced to a mere from of words.  *Taylor v. Alabama*, 457 U.S. 687, 690, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982).

The United States Supreme Court has stated that "The exclusionary prohibition extends as well to the indirect as the direct products of such invasions." *Wong Sun v. United States*, 371 U.S. 471, 483, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The indirect fruits of an illegal search or arrest should be suppressed when they bear a sufficiently close relationship to the underlying illegality. *See, Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); and *Taylor v. Alabama*, 457 U.S. 687; *See also, Wong Sun v. United States*, 371 U.S. 471.

The attenuation analysis is appropriate where "the challenged evidence is in some sense the product of illegal government activity." *United States v. Crews,* 445 U.S. 463,471, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).  In *Crews*, the Court determined that the question in the attenuation analysis to ask is whether the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance as to remove the taint imposed upon that evidence by the original illegality. *Crews,* 445 U.S. at 471.  *Miranda* warnings that are given as a result of the illegal stop or detention are not sufficient to break the chain of causation to remove the taint imposed upon the evidence by the original illegality.  *See,*

9

*Brown,* 422 U.S. 509.  *Brown*, *Dunaway*, and *Taylor* were all cases where the evidence obtained from a criminal defendant was suppressed because the police lacked probable cause. The illegality in these cases was the absence of probable cause and the wrong consist of the police's having control of the defendant's person at the time defendants made the post arrest confession.  The courts held in each case that the confessions were the product of the illegal government activity.

All of Mr. Monetti's statements were obtained as a result of the illegal stop, seizure, and detention of the defendant, all statements and letters made during the illegal custody of defendants person should be suppressed.

**IV.  THE SEARCH WARRANTS OBTAINED BY LAW ENFORCEMENT WERE THE FRUIT OF THE ILLEGAL STOP, DETENTION, ARREST AND QUESTIONING AND AS SUCH SHOULD BE SUPPRESSED.**

A magistrate's issuance of a search warrant does not sanitize the prior illegal conduct when the method by which the evidence supporting a search warrant is clearly illegal. *United States v. O'Neal,* 17 F.3d 239, 243 n.6 (8th Cir. 1994). The target of the exclusionary rule is to deter police misconduct. *O'Neal,* 17 F.3d at 243 n.6 (referring to the rule as recognized in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). "If clearly illegal police behavior can be sanitized by the issuance of a search warrant, then there will be no deterrence, and the protective aims of the exclusionary rule will be severely impaired if not eliminated." *O'Neal*, 17 F.3d at 243 n.6.

The government will probably argue that the statements from Ms. Logan Snyder are not the fruit of the poisonous tree, however, in *Oregon v. Elstad*, 470 U.S. 298, 305-06, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the court held that "evidence and witnesses

discovered as a result of a search in violation of the Fourth Amendment must be excluded from evidence." Because Ms. Snyder was discovered as a result of the violation upon Mr. Monetti's Fourth Amendment rights, her statements should be excluded from the Affidavit in Support of the Search Warrants.    Likewise, the evidence obtained from the warrants should be suppressed because there was no probable cause for the warrant independent of the illegally obtained information. "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all." *Silverthorne Lumber Co. V. United States*, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

In presenting a motion suppress evidence as fruit of an unlawful search, a defendant must show that 1) the search violated his Fourth Amendment rights and 2) that a factual nexus exists between the illegality and the search. The court clarified this test by stating that the defendant must make a threshold showing that the search is tainted by the earlier Fourth Amendment violation. *United States v. Foote*, Not reported in F.Supp. 2d, 2002 WL 1856996 (D.Kan. 2002) (Citing *United States v. Deluca*, 269 F.3d 1128, 1135 (10th Cir. 2001)). At a minimum a defendant must adduce evidence at the suppression hearing showing the evidence sought to be suppressed would not have come to light but for the government's unconstitutional conduct." *United States v. Foote,* 2002 WL 1856996. *(*Citing *Nava-Ramirez,* 210 F.3d 1128, 1131 (10th Cir. 2000)). Once defendant makes this showing, the government must prove that the evidence sought to be suppressed is not fruit of the poisonous tree by demonstrating that 1) the evidence would have inevitably been discovered 2) the evidence was discovered through

independent means, or 3) the evidence discovered was so attenuated from the illegality as to dissipate the taint of the unlawful conduct. *United States v. Foote,* 2002 WL 1856996 *(*Citing *Nava-Ramirez,* 210 F.3d at1131).

Mr. Monetti's Fourth Amendment rights were violated because the investigatory stop and subsequent detention were conducted without reasonable suspicion.   All observations by law enforcement, statement by defendant and Ms. Logan Snyder and items of physical evidence were obtained as a direct result of the violations of Mr. Monetti's Fourth and Fifth Amendment Rights.

The government cannot show that by a preponderance of the evidence that the information received would have inevitably been discovered though an independent legal means. *See, United States. v. Foote,* 2002 WL 1856996*; United States v. Griffin*, 48 F.3d 1147, 1150 (10th Cir. 1995) (quoting *United States v. Ford*, 22 F.3d 374, 377 (1st Cir. 1994)); *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

The government cannot show that the evidence was not obtained by a genuinely independent source of the information and tangible evidence at issue. *See, Foote*, supra.  The affidavit for the search warrant was based on the traffic stop and the statements obtained while the passengers were in illegal custody.

Because the statements and evidence were the fruit of the unlawful stop and were the basis of the affidavit the court should find that there was not sufficient attenuation. *See, Foote*, 2002 WL 1856996.

Courts that have upheld a warrant based on information that is from an illegality have done so when there is probable cause for the warrant based on information known to the officers before the illegality. *See*, *Segura v. United States*, 468 U.S. 796, 104

12

S.Ct. 3380, 82 L.Ed.2d 599 (1984). Courts have also upheld warrants when the magistrate did not rely on the illegally obtained information alone. *See, O'Neal,* 17 F.3d at 243.

The purpose of the exclusionary rule is to refuse to admit evidence, obtained from conduct that deprived defendants of some right, to instill in those particular investigating officer or their future counterparts, a greater degree of care toward the rights of an accused. *United States v. McClain,* 444 F.3d 537, 541 n.3 (citing *United States v. Peltier*, 422 U.S. at 539 (1975).

In *United States v. Davis*, 430 F.3d 345 (6th Cir. 2005) the issue of whether a prior illegality tainted the subsequent search, pursuant to a warrant, or whether the subsequent search warrant cured the underlying constitutional violation. The Court held that the search with a warrant was tainted by the prior illegal search, and thus the search warrant was insufficient to overcome the constitutional defect. *Id*. At 357-58. The Court then said that the remedy was to "remove the [illegally seized evidence] from the affidavit when considering whether there is still sufficient evidence to establish probably cause." *Id*. at 357-58 (citing United States v. Reilley, 76 F.3d at 1282; United States v. Bishop, 264 F.3d 919, 924 n.2 (9th Cir.2001)).

In allowing a warrant to be upheld based on an affidavit containing no information independent of the violation of a person's Fourth Amendment Rights, would defeat the purpose of the exclusionary rule and would enable law enforcement officers will be able to invade other's privacy at their own discretion. The court should not allow this infringement and must find all of the warrants to be invalid and any information seized through them as inadmissible.

13

CONCLUSION

The stop of the defendant's vehicle was not based upon reasonable suspicion and therefore violated Mr. Monetti's Fourth Amendment rights. The statements and evidence seized as a result of the stop, seizure, and search of defendant and his motor vehicle, and the evidence obtained pursuant to the search warrants are fruit of the illegal stop. For the foregoing reasons, Mr. Monetti respectfully requests that this Court grant his motion to suppress.

Respectfully submitted, this 4th day of June, 2007.

JOHN H. MONETTI, Defendant

By **s/ Carlos A. Monzón**
**Carlos A. Monzón** (#20453)
Attorney for Defendant
650 "J" Street, Ste. 401
The Mill Towne Building
Lincoln, NE 68508
(402)477-8177
e-mail: MonzonLaw@aol.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 4, 2007, I electronically filed the foregoing with the Clerk of Court, using the ECM/ECF system, which sent notification of such filing to the following: Mr. Michael Norris, Assistant U.S. Attorney.

s/ Carlos A. Monzón